UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

CHICK-FIL-A, INC.,

          Plaintiff,

v.                                                Case No. 5:07-cv-501-Oc-10GRJ

CFT DEVELOPMENT, LLC, PANDA
RESTAURANT GROUP, INC., PANDA
EXPRESS,

          Defendants.
_____

## ORDER

Pending before the Court is Defendants/Counter-Plaintiffs' Motion To Compel Deposition of Daniel T. Cathy. (Doc. 63.) Plaintiff, Chick-Fil-A, Inc. has filed a memorandum in opposition and, accordingly, the matter is ripe for review. For the reasons discussed below, Defendants/Counter-Plaintiffs' Motion To Compel Deposition of Daniel T. Cathy is due to be **DENIED**.

## I. INTRODUCTION

Defendants/Counter-Plaintiffs, CFT Develpments, LLC ("CFT"), Panda Restaurant Group, Inc., ("PRG"), and Panda Express, Inc. ("PEI")(collectively "Panda") request the Court to enter an order compelling Plaintiff/Counter-Defendant, Chick-Fil-A, Inc. ("CFA") to produce its President and Chief Operating Officer, Daniel T. Cathy ("Cathy") for deposition. During the discovery phase of this case, Panda unsuccessfully attempted to schedule the deposition of Cathy in Atlanta, Georgia - where Cathy resides and CFA maintains its corporate offices. Consequently, Panda unilaterally noticed the deposition of Cathy for December 30, 2008 the last day for fact discovery in this case.

Prior to the commencement of the deposition CFA advised Panda in writing that it would not produce Cathy for deposition and consequently Panda filed the instant motion to compel.[1]

Panda raises several arguments in support of its position that Cathy possesses superior, first-hand or unique knowledge regarding CFA's intentions with respect to the restrictive covenants involved in this case as well as information relevant to the claims and defenses in this case. According to Panda, Cathy has specific knowledge with respect to: (1) a March 25, 2005 letter regarding property located in Seminole, Pinellas County, Florida; (2) the execution of a ground lease for property located on Ulmerton Road in Clearwater, Florida; and (3) various other issues in the case including the meaning of the words in the restrictive covenants, CFA's growth strategy, CFA's view of Panda as a competitor and CFA's knowledge of Panda's existence and operation.

CFA counters that some of the information sought by Panda is irrelevant and, as evidenced by the affidavit of Cathy,[2] he does not have superior or unique knowledge regarding the issues which Panda has identified as areas of inquiry at his deposition.

## II. **DISCUSSION**

Requests to depose high level corporate officers, as here, are commonly referred to as "apex" depositions and there is a considerable body of jurisprudence addressing the circumstances concerning when it is appropriate to depose the top executive in a

---

[1] Typically, where, as here, a party resists producing an "apex" witness for deposition, the correct procedural mechanism is to file a motion for protective order, rather than refusing to produce the witness and thus forcing the party seeking to conduct the deposition to file a motion to compel. However, in this instance counsel for the parties recognized pragmatically that there was a fundamental dispute concerning whether Panda could depose Cathy and therefore the procedural vehicle in which the issue is presented to the Court does not effect the result. The Court's analysis of the issue is ultimately the same.

[2] Doc. 65, Ex. 10.

company. Generally, because the CEO of a large corporation is familiar with the big picture of the operations of a company - and is not familiar with the day to day operations of a business - most courts have fashioned a test that requires the party seeking the deposition of a CEO to show that the executive has "unique or superior knowledge of discoverable information." *See, e.g.* Salter v. Upjohn Co., 593 F.2d 649, 651 (5th Cir. 1979)(protective granted barring deposition of President of drug company because he lacked direct knowledge of the facts in dispute, and other employees had more direct knowledge); Lewelling v. Farmers Ins. Of Columbus, Inc., 879 F. 2d 212, 218 (6th Cir. 1989)(protective order barring plaintiffs from deposing their employer's CEO, who lacked knowledge about any relevant facts); Burns v. Bank of America, No. 03 Civ. 1685 RMB JCF, 2007 WL 1589437, *3 (S.D.N.Y. June 4, 2007)(holding that unless it can be demonstrated that a corporate official has some unique knowledge of the issues in the case it may be appropriate to preclude a deposition of a highly placed executive while allowing other witnesses with the same knowledge to be questioned); Faro Technologies, Inc. v. Romer, Inc., No. 6:06-cv-13-Orl-19KRS, 2007 WL 496615 *3 (M.D.Fla. Feb.12, 2007); Baine v. Gen. Motors Corp., 141 F.R.D. 332, 335 (M.D. Ala. 1991); *see also,* Folwell v. Hernandez, 210 F.R.D. 169, 173-174 (M.D.N.C. 2002)(discussing the standard for permitting an apex deposition).

While not dispositive of the Court's ruling on Defendants' motion, it is notable that there is no mention by Panda in its motion for summary judgment that it has been unable to fully present its position to the Court in the absence of the deposition of Mr. Cathy. The fact that Panda has been able to fully present its arguments and position in its motion for summary judgment without deposing Cathy supports CFA's position that

Cathy does not have knowledge of any relevant disputed facts, let alone superior or unique knowledge. The Court will, nonetheless, briefly address several of the areas Panda contends support their argument that the deposition testimony of Cathy is essential.

One of the areas identified by Panda about which they wish to depose Cathy relates to correspondence between CFA and Panda concerning a parcel of real estate in Seminole, Pinellas County, referred to as the "Seminole Location." According to Panda, Cathy did not respond to a March 2005 letter from a Mr. Davin. Apparently, over a period of seven months during 2004 Panda attempted without success to negotiate a release of a restrictive covenant applicable to the Seminole Location. Indeed, Panda refers to these events as part of its equitable estoppel argument in its motion for summary judgment. Extensive discovery was taken and is relied upon by the parties in the motions for summary judgment concerning the Davin letter and CFA's responses. It is undisputed, however, that Cathy never personally responded to the Davin letter but rather responses were sent by CFA's Senior Vice President of Real Estate and General Counsel. The fact that Cathy did not personally write a letter in response to Mr. Davin's letter has little, if any, bearing on the disputed issues in this case and thus its relevance is marginal at best. Tto the extent that Panda wishes to attach significance to the fact that Cathy did not personally write a letter in response to the Davin letter it is free to make that argument without the need to depose Cathy. Simply because Cathy did not personally send a letter does not mean that Cathy has superior or unique knowledge regarding an issue such that he should be compelled to appear for a deposition.

4

Defendants also argue that they should be permitted to depose Cathy because he signed a lease on the restaurant site on Ulmerton Road in Clearwater, Florida which includes a restrictive covenant similar to the covenant on the Mt. Dora site. Apparently, Cathy was one of two officers to sign the lease more than nine years ago. According to the affidavit of Cathy, he does not have any recollection of even signing the Ulmerton lease and he has never negotiated, drafted or even approved a restrictive covenant. Panda has deposed representatives of CFA pursuant to Rule 30(b)(6) and made thorough inquiry with regard to the negotiation, drafting, purpose, intent and enforcement of the restrictive covenant. There is simply nothing to suggest that Panda has not been able to fully explore these issues without having to depose Cathy.

Defendants also suggest that they should be permitted to take Cathy's deposition to explore CFA's intentions and motivations relative to the Mt. Dora Covenant, as well as relative to other restrictive covenants. In addition, Defendants argue that they should be able to depose Cathy with regard to his definition of "chicken" as that term is used in the restrictive covenant in this case. Inquiry of Cathy regarding these issues would be of marginal relevance. The interpretation of the language in the restrictive covenant - and the meaning of the term "Chicken" - ultimately will be determined by the Court in interpreting the language in the restrictive covenant. Mr. Cathy's personal view or comments on these issues would not serve any useful purpose, particularly in view of the fact that Panda has not suggested Cathy was ever personally involved in negotiating, drafting or approving the Mt. Dora restrictive covenant or any of the other restrictive covenants in other CFA leases. As such, Defendants' argument in this

5

respect fails to identify any matter about which Cathy has any knowledge, let alone unique or superior knowledge.

Additionally, while Panda complains in its motion that there are other areas about which Cathy is knowledgeable, Defendants fail to point to any specific issues and instead simply point out that Cathy, as a member of the executive committee, must have knowledge about such things as CFA's growth strategy and where CFA looks to construct its restaurants. While this may be true - and it is not surprising that the CEO of a company would have knowledge about such issues - these issues are largely irrelevant to whether the restrictive covenant in this case is enforceable or not.

Lastly, Defendants suggest that they wish to make inquiry of Cathy with regard to CFA's recordkeeping and document retention practices and CFA's knowledge of Panda's existence and operation at other sites. These areas of inquiry have been thoroughly explored by Defendants in Rule 30(b) depositions. And while the Defendants contend that Panda has sought information from other witnesses, they fail to point to any specific issues where CFA witnesses were questioned and stated that Cathy, and not the deponent, would be the individual with unique or superior knowledge regarding the particular subject.

Accordingly, for all of these reasons, Defendants have failed to convince the Court that Cathy possesses any unique or superior knowledge concerning any information which is relevant and material to the issues in this case or that Defendants have been unable to obtain full and complete discovery from CFA representatives, already deposed in this case, concerning the matters identified in Defendants' motion to compel. In the Court's view - and as underscored by the thorough record presented to

the Court in the recent summary judgment filings - there is simply no compelling reason for the taking of Cathy's deposition. Defendants/Counter-Plaintiffs' Motion To Compel Deposition of Daniel T. Cathy is, therefore, due to be **DENIED**.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on April 3, 2009.

                                                  GARY R. JONES
                                                  United States Magistrate Judge

Copies to:
    All Counsel