UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

CHICK-FIL-A, INC.,

          Plaintiff,

v.                                              Case No. 5:07-cv-501-Oc-10GRJ

CFT DEVELOPMENT, LLC, PANDA
RESTAURANT GROUP, INC., PANDA
EXPRESS,

          Defendants.
_____

## REPORT AND RECOMMENDATION[1]

Pending before the Court are: (1) Chick-Fil-A, Inc's Motion To Exclude Defendants' Expert Witness, Robert T. Patterson (Doc. 75) to which Defendants filed a response in opposition (Doc. 101) and (2) Chick-Fil-A, Inc.'s Motion To Exclude Defendants' Witness Charles E. Rawley, III (Doc. 77) to which Defendants filed a response in opposition. (Doc. 104). On May 11, 2009, the Court conducted a <u>Daubert</u> hearing. For the following reasons, the Court recommends that the motions be **GRANTED** in part and **DENIED** in part.

## I. INTRODUCTION

Plaintiff, Chick-Fil-A, Inc. ("CFA") filed this action against Defendants, CFT Developments, LLC ("CFT"), Panda Restaurant Group, Inc.("PRG"), and Panda Express, Inc. ("PEI") (collectively referred to as "Panda") alleging that the construction,

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

leasing and operation of a Panda Express restaurant by Panda on a parcel of real property in Mt. Dora, Florida owned by CFT ("Outlot #3"), violates a restrictive covenant of record that Plaintiff contends encumbers Outlot #3 and is intended to benefit real property owned by CFA ("Outlot #2) and upon which property CFA operates a Chick-Fil-A restaurant. The restrictive covenant provides in pertinent part:

> 3.02 Use Restriction Benefiting Outlet Number 2
>
> (a) Outlot #1 and Outlot #3 are prohibited from having any of the following constructed, existing, leased or operated thereon:
>
> (i) a quick-service restaurant deriving twenty-five percent (25%) or more of its gross sales from the sale of chicken; or,
>
> (ii) any of the following specified establishments: Wendy's, Arby's, Boston Market, Kenny Roger's, Kentucky Fried Chicken, Popeye's, Church's, Bojangle's, Mrs. Winner's, Tanner's, Chicken Out, Willie May's Chicken, Biscuitville, Zaxby's or Ranch One.

In its two-count complaint, Plaintiff seeks: (1) a declaratory judgment that the construction, leasing and operation of the Panda Express restaurant on Outlot #3 would constitute a violation of the restrictive covenant; and (2) a permanent injunction preventing further development, construction and operation of the Panda Express restaurant. In their counterclaim, Defendants seek a declaration that construction, leasing, existence and operation of a Panda Express restaurant on Outlot #3 is not, would not, and will not be in violation of the restrictive covenant.

Both parties have offered expert opinions in support of their positions. CFA has moved to strike the expert testimony of Defendants' experts – Robert T. Patterson[2] and Charles E. Rawley, III[3] – both of whom offer various opinions as to why the proposed Panda Express would not violate the restrictive covenant.

## II. DISCUSSION

Under Federal Rule of Evidence 702, <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>,[4] and <u>Kumho Tire Company Ltd., et al., v. Carmichael</u>[5] expert testimony is admissible if (1) the expert is qualified to testify competently, (2) the expert has used sufficiently reliable methodology in reaching a conclusion, and (3) the testimony will assist the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.[6] While <u>Daubert</u> dealt with scientific evidence, and <u>Kumho</u> dealt with technical knowledge, the <u>Daubert</u> analysis applies equally as well to the evaluation of the reliability of non-scientific based expert testimony.[7]

---

[2] The "Expert Report of Robert T. Patterson" ("Patterson Report") and the "Analysis of the January 7, 2009 Expert Report of Robert J. Taylor IV, President Taylor Consulting Group, Inc. and Supplemental and Rebuttal Expert Report of Robert J. Patterson" ("Patterson Supplemental Report") are both filed under seal at S-7.

[3] The "Expert Report of Charles E. Rawley, III" ("Rawley Report") is filed under seal at S-7.

[4] 509 U.S. 579, 589, 113 S.Ct. 2786, 2794-95, 125 L.Ed.2d 469 (1993)

[5] 526 U.S. 137 (1999).

[6] <u>City of Tuscaloosa v. Harcros Chem., Inc</u>., 158 F.3d 548, 562 (11th Cir. 1998)(*citing* <u>Daubert</u>, 509 U.S. at 589.)

[7] <u>See</u>, e.g. <u>United States v. Frazier</u>, 387 F.3d 1244, 12627 (11th Cir. 2004)("The same criteria that are used to assess the reliability of a scientific opinion may be used to evaluate the reliability of non-scientific, experience-based testimony.").

Among the factors that courts are to consider under the Daubert analysis are: (1) whether the expert's methodology has been tested, (2) whether the theory has been subjected to peer review and publication, (3) whether there are standards to guide the use of the technique, and (4) whether the theory or technique has been generally accepted in the scientific community.[8] These factors are illustrative and the trial court is granted considerable flexibility in adapting its analysis to fit a particular case.[9] However, where as here, a case is set for a bench trial, "[t]here is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself."[10] With these principles in mind, the Court will consider both of CFA's motions.

**A.     Robert T. Patterson**

CFA moves to strike Mr. Patterson's opinions that (1) the restrictive covenant is ambiguous; (2) the restrictive covenant is not applicable because Panda Express is not a quick service restaurant; (3) Chick-Fil-A and Panda Express are "not highly competitive concepts"; (4) representative Panda Express restaurants do not derive more than 25 percent of gross sales from the sale of chicken; and (5) the proposed Panda Express restaurant could adjust its menu to sell less chicken and thereby avoid violating the restrictive covenant.   CFA argues that Mr. Patterson's opinions should be stricken because they are not reliable or relevant.

Mr. Patterson has 42 years of experience in the hospitality industry, both working in a variety of operations in the lodging and food service industries and as a

---

[8] Daubert, 509 U.S. at 593-94, 113 S.Ct. 2786.

[9] Kumho, 526 U.S. at 152, 119 S.Ct. at 1167.

[10] United States v. Brown, 415 F.3d 1257, (11th Cir. 2005.)

4

consultant.[11] He received his Bachelor of Science degree in Hotel Administration and his Master of Business Administration degree from Cornell University. Mr. Patterson is a Certified Public Accountant and holds the AICPA's Accredited in Business Valuation designation. Mr. Patterson has been the Financial Editor for Food Service Marketing Magazine and supervised the writing of the Sixth Edition of the Uniform System of Accounts for Restaurants.

In this case CFA does not challenge the qualifications of Mr. Patterson as an expert.[12] Therefore, the Court will not discuss the first prong of Daubert and concludes, for purposes of the Daubert analysis, that Mr. Patterson is qualified to testify competently regarding the matters identified in the Patterson Report and Patterson Supplemental Report.

Having determined that Mr. Patterson is competent to testify to the matters in his expert report, the Court must review the factors outlined in Daubert to determine whether Mr. Patterson's opinions are reliable and relevant.

### i. The restrictive covenant is ambiguous

Mr. Patterson opines that there are several ambiguities in the phrase "a quick-service restaurant deriving twenty-five percent (25%) of its gross sales from the sale of chicken." Specifically, Mr. Patterson contends that the following are ambiguous and subject to different possible interpretations – "a quick-service restaurant"; "25 percent of

---

[11] Mr. Patterson's *curriculum vitae* is attached as Attachment A to the Patterson Report.

[12] While not challenging Mr. Patterson's qualifications on this motion, CFA does not concede that Mr. Patterson is qualified to testify regarding the matters in his Report or Supplemental Report.

5

its gross sales"; and "sale of chicken." CFA argues that Mr. Patterson's ambiguity opinion should be stricken because it constitutes an impermissible legal conclusion.

While an expert may testify in the form of an opinion or inference that embraces an ultimate issue of fact, expert testimony that expresses a legal conclusion is inadmissible.[13] The interpretation of a written contract generally is a matter of law to be determined by the court.[14] Nevertheless, Panda argues that Mr. Patterson's opinions are proper because where the terms of the contract are ambiguous, parol evidence is admissible to explain, clarify or elucidate the ambiguous term. Mr. Patterson's opinion, however, points out why he believes the restrictive covenant is ambiguous and offers several possible interpretations of the language. Even if the Court found that the restrictive covenant was ambiguous, and determined that it was appropriate to look at parol evidence, Mr. Patterson's opinions would offer no assistance in explaining, clarifying or elucidating any of the ambiguities he has identified. Accordingly, Mr. Patterson's opinions regarding perceived ambiguities in the restrictive covenant should be excluded.

### ii. Panda Express is not a "quick-service restaurant"

In his Report, Mr. Patterson opines that Panda Express is not a quick-service restaurant as that term is used in current industry parlance; but rather a fast-casual restaurant. This distinction is significant because the restrictive covenant only applies to "a quick-service restaurant." CFA argues that because Panda has admitted throughout

---

[13] McMahan Securities Co. L.P. v. FB Foods, Inc., 2007 WL 47366*2 (M.D. Fla. 2007.)

[14] See id.

6

this litigation that it is a quick service restaurant --both through judicial admissions and the admissions of company witnesses – Mr. Patterson's opinion should be foreclosed because it is not relevant to any disputed issue in the case.

This issue is squarely before the Court in the parties' cross motions for summary judgment. (Docs. 79 & 82.) On summary judgment, Plaintiff argues that Defendants' counterclaim and amended counterclaim contain binding judicial admissions that Panda Express operates a chain of "quick service Chinese food restaurants"; and that those admissions with other admissions made by Panda's corporate representatives throughout discovery are binding on Defendants. In contrast, Defendants argue that Panda Express is not a "quick-service restaurant, but rather should be classified as a "fast casual restaurant." Defendants contend that they did not realize that the description of Panda Express was erroneous until Mr. Patterson advised Panda in December, 2008 that Panda was classified in the industry as a 'fast casual restaurant." In addition, Panda has offered evidence that previous references to Panda Express as a quick-service restaurant were made in a "very general, loose and undefined way."

Although there is a mountain of evidence supporting CFA's position, nonetheless, the issue of whether Panda Express is a quick-service restaurant is still a disputed issue in the case for the Court to resolve and thus relevant. Accordingly, Mr. Patterson's opinion that Panda Express is a fast-casual restaurant (and not a quick-service restaurant) should not be excluded.

### iii.     Chick-fil-A and Panda Express are "not highly competitive concepts"

Mr. Patterson opines that Chick-Fil-A and Panda Express are at most, "indirectly competitive concepts." CFA argues that this opinion should be excluded because it is

7

irrelevant. In response, Panda argues that the language in subsection (ii) of the restrictive covenant clearly expresses CFA's intent to restrict only its "direct" competitors from operating on Outlot 3 and that Mr. Patterson's opinion is relevant "in determining CFA's intent relative to the reach, breadth and scope of the Restriction."

By its express terms, subsection (i) of the restrictive covenant bars "a quick-service restaurant deriving twenty-five percent (25%) or more of its gross sales from the sale of chicken." There is simply no express requirement that the restaurant be a competitor. Plaintiff's argument that subsection (ii) shows CFA's intent to restrict only its "direct" competitors is strained at best because the two subsections are separated by the disjunctive "or" and the list in subsection (ii) is not limited to "chicken chain restaurants". Moreover, while Mr. Patterson opines that Chick-Fil-A and Panda Express are "indirect competitors," he does not purport to opine that the restrictive covenant is inapplicable to Panda Express for that reason.[15] Additionally, even if the Court found that the restrictive covenant was ambiguous, and determined that it was appropriate to consider parol evidence, Mr. Patterson's opinion would not assist the Court in determining CFA's intent.

Accordingly, Mr. Patterson's opinion that Chick-Fil-A and Panda Express are not highly competitive concepts should be excluded.

### iv. Representative Panda Express restaurants do not derive more than 25% of gross sales from the sale of chicken

The parties have offered dueling methodologies as to how the Court should determine whether the proposed Panda Express restaurant would derive more than

---

[15] See Deposition of Robert T. Patterson filed under seal at S-7 at 115-16.

25% of gross sales from the sale of chicken. Both parties have offered expert opinions in support of their methodologies – Mr. Patterson for Panda and Robert J. Taylor, IV for CFA.

While the parties agree that in determining the percentage of gross sales that the proposed Panda Express will derive from the sale of chicken, revenue from the sale of combo meals must be allocated between the entrees and side orders[16] the parties' experts diverge as to the appropriate method for making the allocation. Panda does not make this type of allocation in the ordinary course of business, and prior to this litigation, Panda had never used either of the methodologies proposed by the experts.[17] Moreover, neither expert could identify any generally accepted accounting principle, text or publication, which provided direct guidance on how to make such an allocation.[18]

Turning first to Mr. Patterson, he opines that representative Panda Express restaurants do not derive more than 25% of gross sales from the sale of chicken. In reaching this conclusion, Mr. Patterson relies upon the methodology employed by Steven Moukabaa[19] and later by Panda employees David Lai and Huntley Castner.

---

[16] Panda Express sells several "combo meals" including a Panda Bowl (one entree and one side), a Two-Item Combo (two entrees and one side), a Three-Item Combo (three entrees and one side) and a Panda Feast (three entrees and two sides). See Deposition of Anna Nero filed under seal at S-7 at pages 34-36, 62-64.

[17] Deposition of Huntley Castner filed under seal at S-7 at pages 78-79.

[18] See Deposition of Robert T. Patterson filed under seal at S-7 at pages 54-55; Deposition of Robert J. Taylor, IV filed under seal at S-8 at page 69.

[19] Mr. Moukabaa's methodology and calculations are outlined in the Affidavit and Declaration of Steve B. Moukabaa filed under seal at S-3.

("Moukabaa methodology.")[20]  This methodology relies upon two assumptions.  First, that sales attributed to combo meals should be allocated based on the relative volume of the entree and side order (the "volume methodology").  Second, that sales attributed to chicken entrees should be further allocated to "chicken" and "non-chicken ingredients" based on the relative weight of each ("ingredient allocation").  Apparently, both of these assumptions must be true in order for Mr. Patterson to conclude that the proposed Panda Express would not derive more than 25% of gross sales from the sale of chicken.[21]

Chick-Fil-A's expert, Robert J. Taylor, IV, disagrees with Mr. Patterson and opines that the best method of allocating combo meal sales between entree and side order is to use Panda Express's own *a la carte* pricing structure ("price methodology").  Further, Mr. Taylor opines that all sales from the sale of a chicken entree should be included in calculating Panda Express restaurant's chicken sale percentage.  Based on this methodology, Mr. Taylor opines that the proposed Panda Express would derive 46.3 percent of its gross sales from the sale of chicken.

CFA argues that Patterson's methodology for allocating combo meal sales is not based on sufficient facts or data.  However, Mr. Patterson endorsed Mr. Moukabaa's

---

[20] Mr. Lai's methodology and calculations are outlined in the Affidavit and Declaration of David Y. Lai, filed under seal at S-9.

[21] At the Daubert hearing, counsel for Panda contended that Mr. Patterson's Supplemental Report clarified that it was not necessary for both assumptions to be true.  However, after reviewing the Supplemental Report, the Court is unclear as to what counsel was referring.  Indeed, Mr. Patterson did not suggest in his Supplemental Report that chicken sales would be under 25% if either the volume methodology or ingredient allocation were not accepted.  Presumably, counsel was referring to Mr. Patterson's opinion that it would not cause a material difference if the cost of ingredients was used in the ingredient allocation instead of the weight of ingredients.

10

methodology and calculations which were based upon the actual sales data from the representative Panda Express restaurants. Mr. Patterson opined that Mr. Moukabaa's opinions were based upon sufficient sales data – i.e., five restaurants over a four-week period. Moreover, in performing his analysis, CFA's expert, Mr. Taylor, accepted as true the exact same sales data.

CFA also contends that Mr. Patterson's volume methodology is not reliable. While Mr. Patterson's methodology may be strained, Panda points to record evidence that is supportive of Mr. Patterson's reliance on the volume methodology. First, there is evidence that customers go to Panda Express for the large serving sizes.[22] Second, Patterson personally observed that a substantial number of customers when asked whether they are dine-in or takeout respond "takeout" and then go to a table with their takeout container (which holds more food) and eat their food. Third, in a memo dated November 28, 2008, Tom Davin advised Panda management that Panda had received complaints about "underportioned" entree plates and emphasized the importance of delivering "full portions" and "full plates."[23] Finally, Panda recently conducted a consumer survey which it contends supports its position that customers value the quantity of food they receive from Panda Express more than the relative price or monetary value of such items.[24] While the foundation for this evidence may suffer a

---

[22] See e.g., Deposition of Steve Moukabaa filed under seal at S-7 at page 84.

[23] See Attachment F to Patterson Report.

[24] See Affidavit and Declaration of Anna Yee Nero, filed under seal at S-9; see also the March 31, 2009 Affidavit and Declaration of Robert T. Patterson filed under seal at S-9 (attesting that consumer research further supports his opinion.)

11

number of flaws, the evidence (if accepted) lends some support to Mr. Patterson's opinion that the volume methodology should be utilized.

The Court acknowledges that Mr. Patterson's volume methodology raises some serious concerns. However, simply because the experts disagree as to the most reliable method for calculating the percentage of gross sales derived from chicken does not require the exclusion of Mr. Patterson's opinion – especially since neither party can point to any other situation where either methodology has been used. Moreover, the Court is not required to determine that the expert testimony Panda seeks to offer into evidence is irrefutable or certainly correct.[25] The certainty and correctness of Mr. Patterson's opinion (as well as Mr. Taylor's opinion) will be tested through cross-examination and presentation of contrary evidence and not by a Daubert challenge. This is especially true, where as here, "the gatekeeper is keeping the gate only for himself."[26]

Accordingly, the Court concludes that the opinions to be offered by Mr. Patterson as to the chicken sale percentages, albeit constructed solely for this lawsuit, are sufficiently reliable and relevant to the issues in the case and would provide some assistance to the trier of fact. As such, the Court concludes that these opinions of Mr. Patterson pass muster of the second prong of the Daubert analysis and, therefore, should not be excluded.

---

[25] Westberry v. Gislaved Gummi AB, 178 F.3d 257, 261 (4th Cir. 1999)

[26] Brown, 415 F.3d 1257.

### v. Panda Express could adjust menu to sell less chicken

Mr. Patterson also opines that it is "highly likely" that the proposed Panda Express could lower its chicken sales below 25% percent by reducing the number of menu items containing chicken. CFA argues that this opinion should be excluded because it is irrelevant. The Court agrees.

Whether Panda might be able to modify its menu so that it would sell less chicken is not relevant to the Court's determination of whether the proposed Panda Express violates the restrictive covenant. Panda essentially argues that if the Court finds that the proposed restaurant violates the restrictive covenant, Panda could then change its menu so that it would not violate the restrictive covenant. However, while Panda asks the Court to bless that future conduct, Mr. Patterson has acknowledged that it would be speculative at this point to predict the effect of a future menu change on Panda's percentage of chicken sales.[27] Accordingly, Mr. Patterson's opinion that Panda Express could adjust the menu to lower chicken sales below 25% should be excluded.

### B. Charles E. Rawley, III

CFA moves to strike as irrelevant and unhelpful Mr. Rawley's opinions that (1) Panda Express is an "asian concept restaurant" not a "chicken concept" and thus, should not be seen as a "direct competitor"; and (2) "chicken" as used in the restrictive covenant means "the flesh of the fowl only" and, therefore, Panda is entitled to back

---

[27] See Deposition of Robert T. Patterson filed under seal at S-7 at pages 268-69.

out breading, seasoning, vegetables and any other non-chicken ingredients in allocating the sales derived from chicken entrees.

Mr. Rawley has more than thirty years in the restaurant and food service industries. During his career, Mr. Rawley was President of Briarpatch, Inc., a nine-store chain of full service restaurants; part-owner in franchise operation responsible for the start-up of Bojangles Chicken and Biscuits franchising throughout the state of Kentucky; Vice President and General Manager of various divisions of Kentucky Fried Chicken; Senior Vice President of Concept Development and Chief Operating Officer for Kentucky Fried Chicken; and as Chief Development Officer of Tricon Global Restaurants which later became Yum Brands, Inc. Mr. Rawley has a bachelor's degree in business administration and a masters in business administration from The College of William and Mary.

CFA does not challenge the qualifications of Mr. Rawley as an expert.[28] Therefore, the Court will not discuss the first prong of Daubert and concludes, for purposes of the Daubert analysis, that Mr. Rawley is qualified to testify competently regarding the matters identified in the Rawley Report.

While Mr. Rawley may be competent to testify to the matters in his expert report, the Court must still determine under Daubert whether Mr. Rawley's opinions are reliable and relevant.

CFA challenges Mr. Rawley's opinion that Panda Express should not be seen as a "direct competitor" because Panda Express is an "asian concept restaurant" and

---

[28] While not challenging Mr. Rawley's qualifications on this motion, CFA does not concede that Mr. Rawley is qualified to testify regarding the matters in his Report.

not a "chicken concept" restaurant. This opinion is not relevant to any disputed issue in the case and should be excluded for the same reasons the Court excluded Mr. Patterson's opinion that CFA and Panda Express are not direct competitors. Simply put, whether Panda Express and CFA are competitors has nothing to do with whether there is a violation of the restrictive covenant.

CFA also challenges the admissibility of Mr. Rawley's opinion that the restrictive covenant should be read to mean that only sales allocated to the sale of the "flesh of the fowl" should be considered in calculating the percentages of gross sales "derived from the sale of chicken." The Court agrees that Mr. Rawley's opinion in this regard should be excluded because this opinion is nothing more than an attempt to interpret the restrictive covenant – and to define the word "chicken" in the restrictive covenant - a determination the Court will need to make as a matter of law. As such Mr. Rawley's opinion with regard to how to interpret the restrictive covenant and how to define "chicken" is due to be excluded on the grounds of relevancy.

However, Mr. Rawley's opinion - based upon his analysis of Panda's performance models and Panda's use of a point of sale system and inventory depletion - that the ingredient methodology should be used as part of the methodology of allocating sales derived from chicken is relevant to a disputed issue. As discussed above, the parties hotly dispute the appropriate methodology to determine whether the proposed Panda Express will derive twenty-five percent (25%) or more of its gross sales from the sale of chicken. While there may be flaws in the methodology of allocating a chicken entree into chicken and non-chicken ingredients as the preferred and reasonable method of determining the percentage of gross sales derived from the

15

sale of chicken it is nonetheless an available methodology and as such goes to the weight and not the admissibility of the evidence. Accordingly, the Court concludes that Mr. Rawley's opinion in this regard should not be excluded and that the Court as the finder of fact may assign the opinion such weight which the Court deems appropriate after the opinion has been subjected to the rigors of cross-examination.[29]

### III.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that Chick-Fil-A, Inc's Motion To Exclude Defendants' Expert Witness, Robert T. Patterson (Doc. 75) should be **GRANTED** as detailed in this Report and Recommendation and otherwise **DENIED**; and Chick-Fil-A, Inc.'s Motion To Exclude Defendants' Witness Charles E. Rawley, III (Doc. 77) should be **GRANTED** as detailed in this Report and Recommendation and otherwise **DENIED**.

**IN CHAMBERS** in Ocala, Florida, on May 16, 2009.

_____
GARY R. JONES
United States Magistrate Judge

Copies to:
    The Honorable Wm. Terrell Hodges
    Senior United States District Judge

    Counsel of Record

---

[29] Because there is no motion pending to exclude Mr. Rawley as a fact witness, the Court does not need to address whether to exclude Mr. Rawley as a fact witness at this time. The issue may be raised, however, either by motion or as an issue to be addressed at the final pretrial conference.